UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

| | |
|---|---|
| **MARTIN J. WALSH**, Secretary of Labor, United States Department of Labor, | :<br>:<br>: |
| Plaintiff, | :<br>: Case No.<br>: |
| v. | :<br>: |
| **FLYING FOOD GROUP, LLC,** and the **FLYING FOOD GROUP, LLC WELFARE BENEFIT PLAN**, | :<br>:<br>:<br>: |
| Defendants. | :<br>: |

---

# COMPLAINT

Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor ("Secretary"), alleges as follows:

## JURISDICTION AND VENUE

**1.** This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et seq.*, and is brought by the Secretary under ERISA §§ 502(a)(5), 29 U.S.C. §§ 1132(a)(5), to declare the defendants' acts and practices as described herein violate the provisions of Title I of ERISA, and to obtain such further equitable relief as may be appropriate to redress violations and to enforce the provisions of Title I of ERISA.

**2.** This court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

**3.** Venue of this action lies in the Northern District of Illinois, Eastern Division,

1

pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Flying Food Group, LLC Welfare Benefit Plan (the "Plan") is administered in Chicago, Cook County, Illinois, within this district and division.

### DEFENDANTS

4.  The Plan is an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), which is subject to the provisions of Title I of ERISA pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a). The Plan is named both as a defendant and pursuant to Federal Rule of Civil Procedure 19(a) to assure that complete relief can be granted.

5.  From at least January 1, 2011, through the present, Defendant Flying Food Group, LLC ("FFG") was a corporation, organized under Delaware law, with a principal place of business in Chicago, Illinois.

6.  From at least January 1, 2011, through the present, Defendant FFG was the Plan's sponsor; was named in the Plan's governing documents as the Plan Administrator of the Plan; was an employer of employees who were covered by the Plan; exercised authority and control over disposition of the Plan's assets; had discretionary authority and discretionary responsibility in the administration of the Plan; and was a fiduciary to the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

7.  From at least January 1, 2011, through the present, as an employer of employees covered by the Plan and a fiduciary to the Plan, Defendant FFG was a party in interest to the Plan within the meaning of ERISA § 3(14)(A) and (C), 29 U.S.C. § 1002(14)(A) and (C).

## **GENERAL ALLEGATIONS**

8. The Plan is an employee welfare benefit plan consisting of various "sub-plans" that provide self-funded or fully insured medical, prescription drug, dental, vision, group term life, accidental death and dismemberment, long-term disability, employee assistance program, and medical flexible spending account benefits to employees of Defendant FFG and its subsidiaries.

9. As Plan Administrator, Defendant FFG was responsible for handling day-to-day administration of the Plan, including establishing eligible expenses and benefits payable under the Plan; prescribing procedures and forms regarding applications, elections, and claims; receiving and transmitting all information necessary for administration of the Plan to participants, including disclosures required by law; authorizing the payment of benefits; determining eligibility; and determining the amount, manner, and timing of payment of benefits.

10. From at least January 1, 2011, through the present, Defendant FFG withheld contributions from its employees' pay based on the level of benefits elected by the Plan participants.

11. From at least January 1, 2011, through the present, Defendant FFG retained in FFG's general assets the withholdings identified in Paragraph 10 for self-funded Plan benefits, and was responsible for any costs of the self-funded sub-plans not covered by employee contributions.

12. From at least January 1, 2011, through the present, Defendant FFG was responsible for remitting premiums for fully insured Plan benefits to the Plan's insurance carriers.

13. From at least December 1, 2012, through December 31, 2017, Defendant FFG contracted with Blue Cross Blue Shield of Illinois ("BCBS Illinois") to provide administrative services to the Plan's self-funded options.

14. BCBS Illinois issued certificates of coverage for the Premium and LAP Premium Plan options, which provide for medical and prescription drug coverage.

15. From at least December 1, 2012, through December 31, 2017, BCBS Illinois paid medical providers for claims incurred by the Plan and invoiced Defendant FFG for reimbursement of the amounts paid on the Plan's behalf and other plan expenses. Upon receipt, Defendant FFG, as Plan Administrator, issued a request to FFG's treasurer to make payment to BCBS Illinois.

## COUNT I
## The Fiduciary Created a Misrepresentation When Implementing a Policy That Ignored Plan Terms

16. Paragraphs 1 through 15 above are realleged and incorporated herein by reference.

17. The document establishing the Plan ("Plan Document") requires separate documentation for each sub-plan, which is incorporated into the Plan Document. This includes "any applicable insurance applications, insurance policies, plan documents and documents incorporated into those documents by reference, such as insurance booklets or certificates, and/or summary plan descriptions."

18. From December 1, 2012, through December 31, 2013, the Plan's certificates of coverage for the Premium and LAP Premium Plan options, incorporated into the governing Plan Document as set forth in Paragraph 17 above, stated: "Benefits for Outpatient

4

Diagnostic Service and mammograms (other than routine mammograms) will not be subject to the program deductible."

19.     From January 1, 2014, through December 31, 2017, the Plan's certificates of coverage for the Premium and LAP Premium Plan options, incorporated into the governing Plan Document as set forth in Paragraph 17 above, stated: "Benefits for Outpatient Diagnostic Service and mammograms (other than x-ray, lab and routine mammograms) will not be subject to the program deductible."

20.     For at least the year 2016, the Benefit Summary Report ("BSR") for the Plan provided a deductible did not apply for "Outpatient Hospital Benefits . . . Outpatient Diagnostic Services" and "Professional Service Benefits . . . Outpatient Diagnostics."

21.     From January 7, 2013, through December 31, 2017, despite the governing plan terms, Defendant FFG as the named Plan Administrator adopted a policy to impose a deductible on Plan participants and beneficiaries with coverage under the Premium and LAP Premium Plan options for outpatient diagnostic services and mammograms (not including routine mammograms for the entire time period and x-ray and lab services from January 1, 2014, through December 31, 2017).

22.     The imposition of a deductible for outpatient diagnostic services and mammograms (not including routine mammograms for the entire time period and x-ray and lab services from January 1, 2014, through December 31, 2017) was in contravention of the Plan Document and documents incorporated therein, including the certificates of coverage, which stated these services were not subject to the deductible.

23.     From at least December 1, 2012, through December 31, 2017, Defendant FFG, as the named Plan Administrator, had the ultimate discretion and authority to determine all

5

questions of eligibility for participation and eligibility for payment of benefits, to determine the amount and manner of benefits, and to otherwise construe and interpret the terms of the Plan.

24. By applying a deductible to the services set forth in Paragraphs 21 and 22 above, Defendant FFG acted contrary to the Plan Document and documents incorporated therein, tantamount to Defendant FFG operating under its own terms in disregard of the Plan document and the amendment process.

25. Defendant FFG's failure to comply with, or operating under its own terms in disregard of, the Plan Document and the documents incorporated therein, resulted in Defendant FFG's systematic improper adjudication of claims for participants and beneficiaries with coverage under the Premium and LAP Premium Plan options. In short, Defendant FFG exercised its fiduciary responsibilities in claims adjudication by acting contrary to the Plan documents or pursuant to Defendant FFG's own terms, systematically violating ERISA.

26. Moreover, because the services described in Paragraphs 21 and 22 above were not adjudicated in accordance with the Plan Document and documents incorporated therein, the Plan (through Defendant FFG) systematically did not pay the amounts it was required to pay on the claims. As a result of Defendant FFG's failure to comply with the Plan document or its fiduciary decision to operate under its own terms in disregard of the governing Plan terms, the Plan erroneously collected deductibles without any justification under the governing plan terms. Therefore, Defendant FFG caused the participants and beneficiaries who paid a deductible as described in Paragraphs 21 and 22 above a monetary loss.

27. As a result of this imposition of the deductible, participants were misinformed of their rights when seeking these benefits and pursuing claims.

28. By the facts described in Paragraphs 16 through 27 above, Defendant FFG:

    a. failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B); and

    b. failed to discharge its duties with respect to the Plan solely in the interests of the participants and beneficiaries and in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with ERISA, in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

## COUNT II
## Discrimination Based on a Health Status-Related Factor

29. Paragraphs 1 through 15 above are realleged and incorporated herein by reference.

30. From at least January 1, 2011, through April 30, 2018, in administering the Plan, Defendant FFG implemented premiums that varied depending on whether Plan participants reported having used tobacco products on their enrollment form.

31. From at least January 1, 2011, through April 30, 2018, Defendant FFG systematically administered the Plan to charge higher premiums to Plan participants who reported using tobacco products on their enrollment form than to similarly situated Plan participants who reported that they had not used tobacco products on their enrollment form.

32. The higher premium Defendant FFG charged to tobacco users was referred to

7

as a "Tobacco Surcharge."

33. From at least January 1, 2011, through April 30, 2018, the Tobacco Surcharge amount that Defendant FFG imposed was $20 per month per Plan participant.

34. The Plan provided for a Tobacco Surcharge that applied to participants in both the fully insured and self-funded options.

35. From at least January 1, 2011, through April 30, 2018, Defendant FFG solely controlled the Tobacco Surcharges, including determining which participants were charged the Tobacco Surcharge and withholding the Tobacco Surcharge from a participant's paycheck.

36. Defendant FFG administered the Plan and did not provide any alternative standard (reasonable or otherwise) by which Plan participants could obtain the discounted premiums offered to similarly-situated Plan participants who reported that they had not used tobacco products on their enrollment form.

37. From at least January 1, 2011, through April 30, 2018, the Plan did not have an alternative standard for tobacco users to qualify for the discounted premiums (or the possibility of waiver of the otherwise applicable standard), as required by 29 C.F.R. § 2590.702(f)(2)(iv)(2007) and (f)(4)(iv)(2013), as applicable.

38. From at least January 1, 2011, through April 30, 2018, none of the materials disseminated by Defendant FFG, as Plan Administrator, to Plan participants and beneficiaries, describing the terms of the Plan, disclosed the availability of any alternative standard (reasonable or otherwise) to qualify for the discounted premiums (or the possibility of waiver of the otherwise applicable standard), as required by 29 C.F.R. § 2590.702(f)(2)(v)(2007) and (f)(4)(v)(2013), as applicable.

8

**39.** By requiring Plan participants to pay a premium or contribution that was greater than such premium or contribution for similarly situated Plan participants and beneficiaries enrolled in the Plan on the basis of tobacco use, a health status-related factor, and not offering or giving notice of a reasonable alternative to qualify for the reward, Defendant FFG administered the Plan in a manner that violated ERISA § 702(b), 29 U.S.C. § 1182(b).

**40.** By the conduct described in Paragraphs 29 through 39 above, Defendant FFG:

**a.** caused the Plan to require participants to pay a premium or contribution which was greater than such premium or contribution for a similarly situated participant enrolled in the Plan on the basis of a health status-related factor in relation to the participant or to an individual enrolled under the Plan as a dependent of the individual, in violation of ERISA § 702(b), 29 U.S.C. § 1182(b);

**b.** failed to provide a reasonable alternative standard (or waiver of the otherwise applicable standard) to qualify for the discounted premiums, in violation of 29 C.F.R. § 2590.702(f)(2)(v)(2007) and (f)(4)(v)(2013), as applicable; and

**c.** failed to disclose to participants the availability of a reasonable alternative standard (or waiver of the otherwise applicable standard) to qualify for the discounted premiums, as required by 29 C.F.R. § 2590.702(f)(2)(v)(2007) and (f)(4)(v)(2013), as applicable.

## **PRAYER FOR RELIEF**

WHEREFORE, the Secretary prays for judgment:

**A.** Permanently enjoining Defendant FFG from violating the provisions of Title I of ERISA and to administer the Plan in compliance with ERISA § 702, 29 U.S.C. § 1182 and

the implementing regulations;

    **B.**    With Respect to Count One of this Complaint, such relief requested independently or in conjunction:

    a. Requiring Defendant FFG to reimburse all Plan participants and beneficiaries who paid a deductible in contravention of the Plan documents from January 7, 2013, through December 31, 2017, on outpatient diagnostic services and mammograms (not including routine mammograms for the entire time period and x-ray and lab services from January 1, 2014, through December 31, 2017), plus interest;

    b. Declaring that Defendant FFG violated ERISA by systematically applying an improper deductible to the services set forth in Paragraphs 21 and 22 of this Complaint in disregard of the Plan terms;

    c. Requiring Defendant FFG to appoint an Independent Fiduciary to notify all participants impacted by Defendant FFG's systematic application of an improper deductible to the services set forth in Paragraphs 21 and 22 of this Complaint of the improper adjudication of such claims and entitlement to re-adjudication;

    d. Tolling the statute of limitations period(s) and any other claims adjudication deadlines or appeal periods from the date of each claim to a date two years after entry of judgment in this action so that participants and beneficiaries may seek re-adjudication of their claims;

    e. Requiring the Independent Fiduciary appointed by Defendant FFG to consider all requests for re-adjudication submitted by participants and

      beneficiaries and correct all improperly adjudicated claims;

    f.   Requiring Defendant FFG to provide the Secretary with a copy of the notification sent to all participants and report to the Secretary the results of any requested re-adjudications;

    g.   Requiring Defendant FFG to comply with all fiduciary obligations during the re-adjudication of claims;

    h.   Ordering Defendant FFG to pay all reasonable costs and expenses of the Independent Fiduciary; and/or

    i.   Ordering Defendant FFG to restore all unjust enrichment and/or profits resulting from the conduct alleged in Count One of this Complaint;

**C.** With respect to Count Two of this Complaint, requiring Defendant FFG to reimburse all Plan participants who paid the Tobacco Surcharge from at least January 1, 2011, through April 30, 2018, plus interest;

**D.** Awarding the Secretary the costs of this action; and

**E.** Ordering such further relief as is appropriate and just.

            Respectfully submitted,

            **SEEMA NANDA**
            Solicitor of Labor

            **CHRISTINE Z. HERI**
            Regional Solicitor

            */s/ Elisabeth Nolte*
            _____
            **ELISABETH NOLTE** (IL 6321218)
            Senior Trial Attorney

Office of the Solicitor
United States Department of Labor
230 S. Dearborn St., Rm. 844
Chicago, IL 60604
(312) 353-7837
(312) 353-5698 (Fax)
Nolte.elisabeth.p@dol.gov

Attorneys for **JULIE A. SU**, Acting Secretary of Labor, United States Department of Labor, Plaintiff

12